USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/8/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
In the Matter of the Arbitration Between :
NATIONAL UNION FIRE INSURANCE COMPANY :
OF PITTSBURGH, PA, : 16-CV-8821 (VEC)
:
                       Petitioner, : <u>OPINION AND ORDER</u>
:
          -against- :
:
FEDERAL INSURANCE COMPANY, :
:
                      Respondent. :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       These cross petitions to compel arbitration present the unusual circumstance of parties agreeing that they have a binding arbitration clause and agreeing that the arbitration clause applies to their dispute but nevertheless filing petitions and cross-petitions in federal court rather than proceeding to arbitration.

       In 1986, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") entered into a reinsurance agreement with Federal Insurance Company ("Federal"). According to Federal, it acted as a "front" for a syndicate or pool of reinsurers known as the Pinehurst Accident Reinsurance Group ("PARG"). National Union contends that Federal is required to reinsure it for excess workers' compensation claims totaling approximately $3.85 million. National Union petitioned to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Dkt. 1. Federal cross-petitioned to compel arbitration, also pursuant to Section 4 of the FAA. Dkt. 18. The parties agree that they are required to arbitrate their dispute over the workers' compensation claims. The primary bone of contention is whether PARG will have a role in the arbitration and, if it does, the parameters of that role. Whether this

issue will ever arise, whether PARG's involvement will raise an issue of arbitrability that should be resolved by the Court, and whether the arbitrator will ever rule on it, is entirely speculative at this juncture and, therefore, need not be decided. For the reasons that follow, National Union's petition is GRANTED and Federal's cross-petition is GRANTED IN PART. The parties are directed to commence arbitration.

## BACKGROUND

As noted above, the parties first entered into a relevant agreement in 1986. They executed a "placement slip" that includes the essential terms of their agreement and a list of standard clauses applicable to the relationship, including "arbitration." Declaration of Damian F. Salonick (Dkt. 21) ("Salonick Decl.") Ex. A. The parties executed another placement slip in 1988. Salonick Decl. Ex. B. In 1989, they entered into a more complete agreement, called a treaty. Salonick Decl. Ex. C. Both placement slips and the Treaty provide for Federal to reinsure certain excess workers' compensation policies issued by National Union, subject to terms and conditions not relevant here. While the parties dispute which agreement governs their relationship, they agree that all three agreements include arbitration clauses. The parties also agree on the essential terms of the arbitration clause.[1]

National Union submitted the workers' compensation claims at issue to Federal in 2014, Declaration of Seema A. Misra (Dkt. 4) ("Misra Decl.") ¶¶ 5-7, Ex. 3, and Federal denied the claims in late 2014. Misra Decl. Ex. 3. In April 2016, National Union demanded arbitration.

---

[1] In response to the Court's inquiry, National Union clarified that it believes the placement slip executed in 1986 controls. Federal believes the 1989 Treaty governs. It contends that the Treaty replaced the "[s]lip which was merged into the Treaty." Federal's Mem. (Dkt. 20) at 2. The Court need not resolve this dispute because the parties agree that they are bound to arbitrate under either agreement, and they agree on the terms of the arbitration clause for the purposes of resolving this case. National Union's Reply Mem. (Dkt. 31) at 4 n.7 ("National Union is willing to assume for the sake of the pending [p]etition and [c]ross-[p]etition that the [arbitration provision identified by Federal] applies . . . ."). National Union notes that a substantially similar arbitration clause is included in several of its contemporaneous reinsurance agreements. *See* National Union's Reply Mem. at 4 n.7.

2

Misra Decl. Ex. 4. The parties negotiated the terms of the arbitration in a series of email exchanges, the details of which are not pertinent. As is relevant here, they agreed that their dispute was arbitrable and that it should be heard by a panel of three arbitrators, one arbitrator selected by each party and a mutually-agreed-upon neutral umpire. Misra Decl. Exs. 8, 9.

Discussions broke down over the terms of a questionnaire to be sent to the umpire candidates. Federal proposed to identify the members of PARG in the questionnaire as interested entities. Misra Decl. Ex. 13. National Union disagreed. Misra Decl. Ex. 14. After further back-and-forth, the parties were unable to resolve their disagreement and so National Union filed its petition to compel. Dkt. 1. According to National Union, Federal is attempting to substitute PARG as the respondent to the arbitration. National Union's Mem. (Dkt. 3) at 5-7, 14. It seeks an order compelling Federal "to proceed immediately to [] [a]rbitration on its own, i.e., not conditioned on the substitution or addition of non-party PARG or any of its twenty-three (23) members." Pet. (Dkt. 1) at 4.

Recognizing that the parties' tactical jousting may have led to a miscommunication, Federal responded by email: "I [counsel for Federal] have read your filing and believe [National Union] has totally misunderstood our position. We have never denied that Federal is the signatory to the National Union reinsurance treaty nor that it is primarily liable under that Treaty. We understand and agree that as a formal matter, Federal will have to seek indemnity from other member[sic] of the PARG Pool and that the PARG Pool is not liable to National Union in the first instance." Declaration of David E. Spector ("Spector Decl.") (Dkt. 22) Ex. L. Not willing to take "yes" as an answer, National Union responded that it would dismiss the petition if Federal confirmed that "(1) Federal is the sole respondent in the arbitration; and (2) neither Federal nor PARG will attempt to substitute, add, *or involve* PARG, or any of its members . . . in the arbitration." Spector Decl. Ex. L (emphasis added).

3

Federal then filed a cross-petition to compel on December 13, 2016. Cross-Pet. (Dkt. 18.) Federal seeks a declaration that the "[1989 Treaty] reflects the intent and meaning of the words of the [1986 placement slip]"; an order "directing the parties to proceed to arbitration . . . , including arbitration of which entities are the real parties in interest in the arbitration"; and an order appointing the parties' chosen umpire, Mr. Charles Ehrlich, as the umpire in the arbitration. Cross-Pet. at 8-9. National Union filed a consolidated reply and opposition on January 6, 2017. Dkt. 31. Federal replied on January 25, 2017. Dkt. 35. The Court held oral argument on May 19, 2017.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, embodies a strong "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008). For that reason, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), and courts should "construe arbitration clauses as broadly as possible," *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) (quotation marks and citation omitted). Pursuant to the FAA, a district court must grant a motion to compel arbitration if a valid arbitration agreement exists and if the scope of the agreement governs the issues in the case. *See Buchman v. Weiss*, No. 08-CV-5453 (RJS), 2009 WL 2044615, at *2 (S.D.N.Y. July 15, 2009) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996)). "In this Circuit, courts follow a two-part test to determine the arbitrability of claims. In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2)

4

whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir. 2002)). In reviewing a motion to compel arbitration, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

This is the rare case in which the parties agree more than they disagree, and the parties' common ground suffices to resolve the case at this stage. The relief requested by National Union is not contested by Federal. As Federal explains, it has "twice confirmed that it 'is the signatory to the National Union reinsurance Treaty' and that it 'is the sole respondent in the arbitration.'" Federal's Mem. at 1. After National Union ignored this concession, Federal repeated it: "Federal has never suggested that PARG be a formal party to the arbitration . . . . Indeed, Federal made the opposite clear." Federal's Reply Mem. (Dkt. 35) at 2. Plainly then, Federal concedes that it must proceed to arbitration "not conditioned on the substitution or addition of non-party PARG or any of its twenty-three (23) members." Pet. at 4. Because this is the only relief National Union sought in its petition, and because Federal concedes it is appropriate, the Court GRANTS National Union's petition in full.

Federal's cross-petition presents issues that are either not in dispute, are unnecessary to be decided, or are premature at this stage. The parties agree that Mr. Charles Ehrlich should be designated as their neutral umpire. *Compare* Cross-Pet. at 9 *with* National Union's Mem. at 11 (describing Mr. Ehrlich as the parties' "agreed-upon umpire"). It is unnecessary for the Court to decide whether the parties' relationship is governed by the 1986 placement slip (as National Union suggests) or the 1989 treaty (Federal's position). In either case, the parties agree that they have entered into a binding agreement to arbitrate and that their dispute over the workers' compensation claims is within the scope of that agreement.

5

Federal's remaining request for relief – that the Court order National Union to arbitrate "which entities are the real parties in interest in the arbitration," Cross-Pet. at 8 – is premature. Federal contends that National Union is attempting to limit PARG's involvement in the arbitration in any capacity, as a party or otherwise.[2] *See* Federal's Reply Mem. at 8. According to Federal, PARG's involvement in the arbitration and the question of whether it is the real-party-in-interest should be left to the arbitrator. Federal's Reply Mem. at 9-10. National Union understands this issue differently. Belatedly acknowledging Federal's concession that it is the proper respondent, at oral argument, National Union insisted that Federal intends to raise the real-party-in-interest issue so that it may then move before the arbitrators to substitute PARG as the sole respondent or to add it as a co-respondent to the arbitration. According to National Union, the "real-party-in-interest" question is a subterfuge to force National Union to arbitrate against PARG, rather than against Federal.

The parties' differing explanations of this issue and why it matters illustrate why the Court should not resolve it now. Whether the real-party-in-interest issue presents a "question of arbitrability" that is presumptively for the Court to decide, *see In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2014 WL 2445756, at *4 (S.D.N.Y. May 29, 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)), likely depends on how the issue is presented. Questions of "arbitrability" are issues that the "contracting parties would likely have expected a court to [] decide[,]" *Howsam*, 537 U.S. at 83, including "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding

---

[2] Federal characterizes the dispute this way despite the fact that National Union has clearly disclaimed any attempt to limit PARG's *involvement* in the proceedings: "Contrary to Federal's assertion, National Union is not seeking a 'sweeping order from the Court forbidding PARG's 'involvement' in the arbitration.' As National Union explained to Federal, '[I]f there is evidence concerning . . . PARG that is relevant to the arbitration, the parties are free to try to introduce that evidence, subject to the [arbitrators'] authority to allow or disallow that evidence.'" National Union's Reply Mem. at 4 n.9 (internal citations omitted).

contract applies to a particular type of controversy," *id.* at 84. If National Union is correct and Federal seeks to litigate the real party in interest in order to then substitute PARG as the respondent, that motion may eventually present a question of arbitrability: whether there is a binding agreement to arbitrate between National Union and PARG.[3] *See Baker & Taylor, Inc. v. AlphaCraze.Com Corp.,* 602 F.3d 486, 491 (2d Cir. 2010) (whether signatory may be compelled to arbitrate with a non-signatory presents a question of arbitrability). On the other hand, if Federal only wants to "involve" PARG in ways that do not involve substituting it or adding it as a party to the arbitration, Federal may be right, and the issue may be a "procedural" question for the arbitrators. *See Howsam*, 537 U.S. at 84 ("'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (internal quotation marks omitted)); *see also Tuminello v. Richards,* No. 11-CV-5928 (BHS), 2012 WL 750305, at *2-3 (W.D. Wash. 2012) (declining to decide real-party-in-interest question as an issue for the arbitrator). It is entirely unclear how this issue will arise, if at all, in the arbitration; as these petitions illustrate, arbitration has not commenced and Federal has not made any motion. Assuming the issue is raised, the arbitrator may decide it favorably to National Union or in a manner that does not implicate a question of arbitrability regarding the proper parties to the arbitration.

The proper course for now is to compel arbitration. The Court finds the Supreme Court's decision in *PacifiCare Health Sys., Inc. v. Book* to be instructive, albeit factually distinguishable. In *PacifiCare*, a group of physicians sued a collection of managed-health-care organizations for,

---

[3] The Court notes that whether a "question of arbitrability" is to be decided by the Court or the arbitrators in the first instance also depends on whether the parties' arbitration clause is "broad" or "narrow." *See Wells Fargo Advisors, LLC v. Tucker*, 195 F. Supp. 3d 543, 547 (S.D.N.Y. 2016). The Court expresses no opinion as to whether the arbitration clause in this case is broad or narrow.

*inter alia,* violations of ERISA, federal racketeering statutes, and state prompt-pay statutes. 538 U.S. 401, 402 (2003). The healthcare operators moved to compel arbitration. *Id.* at 403. The physicians argued that the arbitration agreements were unenforceable because they included remedial limitations that would preclude them from recovering punitive damages under the racketeering statutes. *Id.* at 403. The Court refused to decide whether the arbitration agreements were unenforceable on the "mere speculation" that the arbitrator might decide an underlying issue of contract interpretation – in *PacifiCare*, what remedies were available in arbitration – in a manner that would raise a question of arbitrability. "In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. . . . [T]he proper course is to compel arbitration." *Id.* at 407.

While the facts of *PacifiCare* differ from the facts in this case, "it was [the] speculativeness, and not what created it, that was central to the *PacifiCare* court's reasoning." *Axis Venture Grp., LLC v. 1111 Tower, LLC*, No. 09-CV-01636 (PAB), 2010 WL 1278306, at *9 n.8 (D. Colo. Mar. 30, 2010). As in *PacifiCare*, the parties here have presented a possible question of arbitrability in unusually abstract terms. It is entirely speculative whether Federal will actually raise the real-party-in-interest issue once arbitration commences; in what context Federal may raise the issue; the exact relief Federal may seek; and whether the arbitrators will resolve the issue in a manner that may then give rise to a potential question of arbitrability regarding the proper parties to the arbitration.[4] But at the same time, the parties agree that they

---

[4] For the same reasons, this issue is not ripe for decision. "To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). Ripeness prevents the courts from "entangling themselves in abstract disagreements," *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)),

are bound to arbitrate and that they have an otherwise arbitrable dispute. In these circumstances, *PacifiCare* teaches that the federal policy favoring arbitration requires the Court to compel the parties to arbitrate and defer ruling on the question of arbitrability until the issue is properly crystallized. *See Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 81 (D.C. Cir. 2005) (*PacifiCare* stands for the proposition that Courts should not decide questions based on "'mere speculation' about how an arbitrator 'might' interpret or apply the agreement."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 40 (1st Cir. 2006) ("Given the presumption in favor of arbitration, a court should not foreclose the operation of that presumption by deciding that there is a question of arbitrability when there is the possibility that an arbitrator's decision in the first instance would obviate the need for judicial decision making." (citing *Pacificare*, 538 U.S. at 407 n.2)); *Axis Venture Grp., LLC*, 2010 WL 1278306, at *9 (declining to address issue when it was "speculative whether the question plaintiff presents—whether it is viewed as one of arbitrability or not—will ever have to be decided" because doing so was "unnecessary and premature" under *PacifiCare*).

In short, the Court declines at this juncture to decide whether Federal's hypothetical motion will raise an issue of arbitrability. The parties are directed to proceed to arbitration in accordance with their agreement.

## CONCLUSION

National Union's petition to compel arbitration is GRANTED. Federal's cross-petition to compel is GRANTED IN PART, insofar as it seeks to compel arbitration and appoint Mr.

---

that involve "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all," *AMSAT Cable Ltd.*, 6 F.3d at 872 (quoting 13A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3532.2 (2d ed. 1984)). It is entirely hypothetical whether Federal will inject the real-party-in-interest issue into the arbitration and, if it does, in what context. Assuming Federal does so, the Court can only speculate as to how the arbitrators will rule. Under the circumstances – a *potential* question of arbitrability, raised in a *hypothetical* motion not before the Court – the Court also finds that this issue is not ripe for decision.

Ehrlich as the parties' neutral umpire. The parties are directed to commence arbitration of their dispute promptly and to submit a joint update to the Court regarding the status of proceedings by **December 15, 2017**, or within one week of a final decision in the arbitration, whichever is earlier.

The Clerk of the Court is directed to close the open motions at docket entries 1 and 18 and STAY further proceedings. *See Axis Venture Grp., LLC*, 2010 WL 1278306 at \*10 (compelling arbitration and staying further proceedings pursuant to *PacifiCare*); *Discount Trophy & Co., Inc. v. Plastic Dress-Up Co.*, No. 03-CV-2167 (MRK), 2004 WL 350477, at \*9 (D. Conn. Feb. 19, 2004) (refusing to decide issue pursuant to *PacifiCare* and staying further proceedings in favor of arbitration).

**SO ORDERED.**

Date: **June 8, 2017**  
      **New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**